Filed 12/2/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | G059397 |
| v. | (Super. Ct. No. 17NF2237) |
| JOHN MICHAEL VASQUEZ, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Scott A. Steiner, Judge. Reversed and remanded.

Todd Spitzer, District Attorney, and Keith Burke, Deputy District Attorney, for Plaintiff and Appellant.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Respondent.

\*          \*          \*

Since he was 19 years old, defendant John Michael Vasquez has continuously been on probation, parole, or incarcerated. At the age of 26, Vasquez pleaded guilty to two armed robberies and went to prison for 13 years. At the age of 42, while still on parole, Vasquez committed two recent armed robberies. In the last robbery, Vasquez hit a gas station attendant in the face with his handgun, causing fractures to the victim's right orbital area. Vasquez also shot the victim in the leg.

The prosecution charged Vasquez with attempted murder, two armed robberies, related crimes, and sentencing enhancements. The prosecution calculated Vasquez's potential exposure at 90 years to life. However, the trial court struck one of Vasquez's two prior strike convictions and imposed a 28-year determinate prison term after Vazquez pleaded to the sheet. The prosecution objected and filed this appeal.

Given Vasquez's background, character, and prospects, he falls squarely within the letter and the spirit of the "Three Strikes" law. (See *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) Further, there are no extraordinary circumstances— none—that justify a departure from the Three Strikes law. Therefore, we find the court abused its discretion by dismissing one of Vasquez's strike priors. (See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 531 (*Romero*).)

To be clear, a 28-year determinate prison term for an attempted murder conviction, two armed robbery convictions, and the associated crimes and enhancements, would ordinarily not constitute an abuse of discretion. But because there are no extraordinary circumstances in this case that justify taking Vasquez out of the otherwise mandatory Three Strikes sentencing scheme, the trial court had no power or discretion to impose anything other than an indeterminate sentence.

Thus, we reverse the trial court's order dismissing the prior strike. On remand, Vasquez will have the opportunity to withdraw his guilty pleas.

# I

## FACTS AND PROCEDURAL BACKGROUND

On August 4, 2017, Vasquez entered a Chevron gas station armed with a handgun. Vasquez approached the counter and demanded money from the attendant. The attendant complied by giving Vazquez $700 from the cash register. Vasquez quickly left the store and entered the passenger seat of a waiting vehicle.

On August 6, 2017, Vasquez entered another Chevron gas station armed with a handgun. Vasquez approached the counter and demanded money from the attendant, who initially opened the cash register. But as Vasquez went around the counter, the attendant closed the register drawer. Vasquez hit the attendant in the face with the handgun, causing swelling, a bloody nose, and fractures to the attendant's right orbital area. As Vasquez was leaving the store, he fired a single round into the attendant's leg before running out and fleeing in a waiting vehicle.

A few weeks later, Vasquez was arrested in Mexico.

*Court Proceedings*

On July 16, 2020, the prosecution filed an amended complaint charging Vasquez with the following crimes: robbery (Aug. 4); assault with a firearm (Aug. 6); unlawful firearm possession (Aug. 4); attempted murder (Aug. 6); robbery (Aug. 6); assault with a firearm (Aug. 4); and unlawful firearm possession (Aug. 6). The complaint further alleged multiple firearm and great bodily injury enhancements. The complaint also alleged two strike priors and a serious felony prior.

On July 30, 2020, Vasquez pleaded guilty to all charges and admitted all enhancements. The court struck one of the strikes and imposed a 28-year sentence: the upper term doubled for the attempted murder charge (18 years), and an additional 10 years for a firearm enhancement (the plea and sentencing hearing will be covered in greater detail in the discussion section of this opinion).

3

II

DISCUSSION

The prosecution filed this appeal from Vasquez's sentence on the grounds that the trial court imposed "a sentence not authorized by law or the imposition of a sentence based upon an unlawful order of the court which strikes or otherwise modifies the effect of an enhancement or prior conviction." (Pen. Code, § 1238, subd. (a)(10).)[1]

A trial court's order dismissing a strike prior is reviewed for an abuse of discretion. (*Williams*, *supra*, 17 Cal.4th at p. 162.) "This standard is deferential. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts . . . ." (*Ibid*.)

In this discussion we will: A) review general legal principles; B) consider the facts from the relevant proceedings; and C) analyze and apply the law to the facts.

*A. General Legal Principles*

"The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record." (§ 1385, subd. (a).) "'The requirement of the statute that a "dismissal" in the "furtherance of justice" be accompanied by a specification of reasons, acts as a restraint on the exercise of that discretion and contemplates that the exercise of such discretion be reviewable by a higher court.'" (*People v. Sassounian* (1986) 182 Cal.App.3d 361, 415.)

The California Supreme Court long ago determined that under section 1385, subdivision (a), a trial court may dismiss a prior strike allegation in the furtherance of justice. (*Romero*, *supra*, 13 Cal.4th at pp. 530-531.) "'"'[I]n furtherance of justice,'

---

[1] Further undesignated statutory references are to the Penal Code.

requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]" [Citations.] At the very least, the reason for dismissal must be "that which would motivate a reasonable judge."'" (*Ibid.*)

"[A] court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely 'to accommodate judicial convenience or because of court congestion.' [Citation.] A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. [Citation.] Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.'" (*Romero*, *supra*, 13 Cal.4th at p. 531.)

The Supreme Court has further described the factors a trial court must consider when exercising its discretion to dismiss a prior conviction under the Three Strikes sentencing scheme. (*Williams*, *supra*, 17 Cal.4th at p. 161.) The trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*)

A court's "great power" to dismiss a prior strike conviction "should only be used in 'extraordinary' circumstances, when the ends of justice demand it." (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1105 (*Mayfield*).) In *Mayfield*, defendant walked up to a pregnant African-American woman "and said, 'I don't like pregnant n\*ggers like you,' 'I'm going to make sure you drop your baby.'" (*Id*. at p. 1099.) Defendant had "an extensive criminal record" including "multiple acts of violence against racial minorities." The prosecution charged defendant with crimes including making a criminal threat.

5

Defendant had two prior strike convictions, so he was facing a mandatory prison sentence of 25 years to life. "However, the trial court dismissed one of his prior strike convictions" in exchange for a guilty plea "and sentenced him to five years in prison." (*Id.* at p. 1099.) In July 2020 (shortly before Vazquez's sentencing hearing), this court reversed the trial court's dismissal of one of defendant's strike priors because: "Everything about [defendant's] crime and his record shouts for application of the 'Three Strikes' law. There is nothing about his criminal history or personal character that suggests he somehow falls outside the spirit of the Three Strikes law." (*Ibid.*)

## B. Relevant Proceedings

In August 2017, the prosecution filed the initial complaint. At some point, the trial court indicated its intention to dismiss one of Vazquez's two prior strike convictions and make "a determinate offer in the high twenties."

On July 16, 2020, the prosecution filed an opposition to Vasquez's "*Romero* motion" to dismiss one of his strike priors. The prosecution calculated Vasquez's maximum potential sentence at 90 years to life (the assault and the attempted murder counts arose from the same set of operative facts). (See § 654.) The prosecution's written opposition is where most of the substantive information about this case is found. Consequently, we will quote extensively from that document.

### 1. Vasquez's Criminal Background

"Mr. Vazquez has accumulated a handful of felony convictions dating back to April of 1995 and has been sentenced to serve in state prison custody for 14 of the 25 years between his first adult felony conviction and the armed robberies charged in the current case.

| Conv. Date | Charges | Court/Case Number | Sentence |
|---|---|---|---|
| 11/30/94 | PC 459-460(b) | OC/94M16600 | Misd. 3 yrs prob. |
| 4/30/95 | VC 10851 | LA/VA030965 | 3 yrs probation |
| | | | 16 months conc. |
| 8/21/95 | VC 10851 | OC/95WF1458 | 3 years probation |
| | PC 459-460(b) | | |
| | PC 496(a) | | 16 months conc. |
| 05/02/96 | PC 459/460 | LA/VA035923 | 16 months conc. |
| 04/12/99 | HS 11550 | LA/9DW01954 | 365 days - jail |
| | PC 148.9 | | 180 days - jail |
| 09/13/01 | PC 211/212.5(c) | LA/VA66826-01 | 13 years state prison |
| | + PC 1202.53(b) | | |
| | PC 211/212.5(c) | | |
| | + PC 12022.53(b) | | |
| 10/11/01 | HS 11378 | LA/VA063506-01 | 2 years conc. [] |

"Mr. Vasquez has two prior strike convictions listed above which were near identical to the current offenses except for Mr. Vasquez did not shoot either victim. According to the LA Court documents . . . , Mr. Vasquez went into a Market, armed with a firearm, and demanded an employee give him cash from the register. The victim complied. Approximately seven days later, Mr. Vasquez repeated that same conduct at a Weinerschnitzel. Mr. Vasquez was originally charged with three counts of robbery but as a part of negotiated plea deal with the prosecution, Mr. Vasquez pled guilty to only two counts with the appropriate gun enhancement for 13 years in State Prison. . . . Mr. Vasquez was paroled from state prison custody on his most recent conviction on July 18, 2014. Mr. Vasquez absconded twice, the first time he absconded for almost two months, the second was when he fled to Mexico after committing the charged offenses in this

7

case. While on parole, Mr. Vasquez also is alleged to have committed another robbery on July 15, 2017 out of Los Angeles County . . . ."

### 2. *Plea and Sentencing Hearing*

On July 30, 2020, the trial court presided over the plea and sentencing hearing. The prosecutor relayed information from the two armed robbery/attempted murder victims. The prosecutor argued against the *Romero* motion:

"The only justifications that I have heard while we were in chambers relate to the age of the defendant's prior . . . strike convictions, as well as the fact that they arose out of the same case. And as far as those two particular justifications are concerned, Mr. Vasquez has been in custody for 13 years since his 2001 conviction. And . . . the fact that the defendant was still on parole for violating those offenses, do not indicate that . . . being so far back in history [that it] should be a justification for the court to strike [Vasquez's] prior strike.

"Additionally, I understand that his strikes arrived out of the same case. However, they arose out of two separate occasions . . . where the defendant on two separate dates went to two separate locations and targeted two separate victims, doing the same exact conduct that he's done in this case. Those two justifications are the only ones that we . . . can look to potentially mitigate Mr. Vasquez's potential sentence to potentially justify the court striking his prior strikes. And . . . those are so minimal that they don't even, at least in the People's view, appear to be justifications at all."

The trial court then orally stated the reasons for its ruling:

"This is an interesting situation for the court because it's the first case of this significance that I have dealt with since *Mayfield* . . . . [¶] I think what's factually distinguishable . . . in that matter, the defendant was facing a life sentence and had been released on the previous sentence of nine years and shortly thereafter, committed that new offense in that case. And then my recollection is he was sentenced to five, and that's

8

obviously different in terms of what the court's indicated is here in this matter.

"I do want the record to reflect though that I'm mindful of that decision in the *Mayfield* decision. I know it's published, so that means it's controlling. And so it was the first case that I could remember at least in my traditional career where a judicial officer was reversed for striking a strike. Maybe that will happen in this case. I don't know what the plans are and that's not for my consideration.

"But what I do need to do and what I'm required to do is apply my experience both as an attorney and as a judicial officer in deciding whether or not the court's indicated is fair and in the interest of justice."

"I spent a lot of time thinking about this case, about whether or not I should make a determinate offer by striking one of the strikes. And so the record is clear, I'm not striking both of the strikes; I'm striking one of the strikes. And as you mentioned correctly, both of the strikes arise from the same case, so I think it's factually distinguishable. [¶] And I also wonder the extent to which, in deciding whether to strike strikes, the court is permitted to take into consideration what the determinate offer will be if it does strike a strike, to what extent does that figure into the analysis? I don't really think there has been a lot of discussion about that in the law in terms of the main query being whether the strike should be stricken at all, and then that's the end of the discussion.

"I think a legitimate valid conversation in this pursuit of determining what is in the interest of justice is [(]A[)], whether a strike or strikes should be stricken; and [(]B[)], if so, what the result and the determinate sentence is.

"And I don't know if it ever came right out and said it in *Mayfield*, but I think that definitely played a part in the analysis that a guy who had just done nine years, gets out and does that heinous act that he did in that case and gets five? The righteous indignation that I sensed in that opinion seemed more explicable based on the fact that not only were strikes stricken in that case, he ended up with single digits, a lesser

9

sentence for the one he previously served for equally horrific conduct or if not even more horrific conduct. So I just want the record to reflect that the court has taken that into consideration.

"I think part of the *Mayfield* analysis also is that that matter in the Court of Appeal's judgment reflected an insufficient consideration of all the factors that the court's obligated to take into consideration, and I think the record was silent or at least not sufficiently loud as to whether or not the court in that case explored it, all the issues that were implicated by its decision to strike the prior, the strike priors in that case. [¶] And I just want the record to reflect that this court has thought long and hard about this matter and I respect where the People are coming from. I respectfully disagree, but I wanted to just say all that for the record."

The court then entertained further arguments. Vasquez's counsel argued "one thing that is extremely important that hasn't been mentioned, and in an intent not to repeat things that have already been said, the age of my client. And the number that the court has offered is a 28 year offer at 85 percent, which puts him well into his sixties at any point if he is able to get paroled or released in some capacity." The prosecution responded that Vasquez "was 40 [years old] after serving an entire 13-year sentence. So I don't think it's beyond the pale or beyond reason to think that once he gets out in his sixties, that he could still hold a gun and hold someone up and pose a significant threat to society and to the community when he is released."

Vasquez then pleaded guilty to all charges and admitted all sentencing enhancements. Vasquez made no statements, nor did he present any mitigating evidence concerning his background, character, and prospects. The court then dismissed one of the

10

strike priors and imposed "a total sentence of 28 years in the state prison."[2]

C. *Analysis and Application*

A trial court abuses its discretion when it dismisses a defendant's prior strike conviction in the absence of extraordinary circumstances that would take the defendant outside of the spirit of the Three Strikes law. (*Williams*, *supra*, 17 Cal.4th at pp. 159-160.) In *Williams*, the defendant initially pleaded not guilty to a felony violation of driving under the influence. (*Id*. at p. 152.) Williams had an extensive criminal background, including two prior strike convictions, and was facing a mandatory indeterminate sentence of 25 years to life. (*Id*. at p. 155.) However, the court indicated it would strike one of his strike priors and impose a determinate nine-year prison sentence "'because of the age of those prior serious felonies, burglaries, and one robbery,' which Williams committed about 13 years earlier when he was about 20 years of age, and 'because of . . . the lack of any kind of violence related crimes from then until now . . . .'" (*Id*. at pp. 155-156, fn. omitted.) After Williams pleaded guilty and admitted the prior convictions, the trial court struck one of the prior strikes and imposed the nine-year sentence. The People appealed from the trial court's dismissal of the prior strike conviction. (*Id*. at p. 157.)

After stating the factors courts should consider when dismissing a strike prior, the California Supreme Court ultimately found the trial "court's order amounted to an abuse of discretion." (*Williams*, *supra*, 17 Cal.4th at p. 162.) "In light of the nature

---

[2] The prosecution also argues the trial court erred by improperly reducing a 25-year punishment on a firearm enhancement, and by imposing concurrent sentences on two counts. (See §§ 12022.53, 654.) The first issue is currently pending review in the Supreme Court. (See, e.g., *People v. Valles* (2020) 49 Cal.App.5th 156, review granted July 22, 2020, S262757.) However, given our reversal based on the trial court's order dismissing of one Vasquez's two strike priors, and the eventual need for a new sentencing hearing, we need not address any additional sentencing issues in this appeal.

11

and circumstances of his present felony of driving under the influence, which he committed in 1995, and his prior conviction for the serious felony of attempted robbery and his prior conviction for the serious and violent felony of rape, both of which he suffered in 1982, and also in light of the particulars of his background, character, and prospects, which were not positive, Williams cannot be deemed outside the spirit of the Three Strikes law in any part, and hence may not be treated as though he had not previously been convicted of those serious and/or violent felonies." (*Id*. at pp. 162-163.)

The Court reasoned: "There is little about Williams's present felony, or his prior serious and/or violent felony convictions, that is favorable to his position. Indeed, there is nothing. As to his present felony: It is a conviction of driving under the influence that followed three other convictions of driving under the influence; 'the existence of such convictions reveals that [he] had been taught, through the application of formal sanction, that [such] criminal conduct was unacceptable-but had failed or refused to learn his lesson' [citation]. As to his prior serious and/or violent felony convictions: The record on appeal is devoid of mitigation." (*Williams*, *supra*, 17 Cal.4th at p. 163.)

"Similarly, there is little favorable about Williams's background, character, or prospects. We do not ignore the fact that he apparently had had a stable living arrangement with a woman, had expressed a desire to help care for their disabled child, and was still loved, and supported, by his family. But neither can we ignore the fact that he was unemployed and did not follow through in efforts to bring his substance abuse problem under control. Certainly, that he happened to pass about 13 years between his prior serious and/or violent felony convictions and his present felony, and proceeded from about 20 years of age to 32, is not significant. He did not refrain from criminal activity during that span of time, and he did not add maturity to age. Quite the contrary. In those years, he was often in prison or jail; when he was not, he violated parole and, apparently, probation, and committed the offenses that resulted in his convictions . . . ." (*Williams*, *supra*, 17 Cal.4th at p.163.) The Supreme Court ultimately concluded: "In

12

view of the forgoing, the [trial] court's order fell outside the bounds of reason under the applicable law and the relevant facts." (*Id*. at p. 164.)

Applying the *Williams* analysis, we find the trial court's order dismissing one of Vasquez's prior strikes similarly constituted an abuse of discretion. As far as Vazquez's past and present strike convictions, there are no extraordinary circumstances in this record—none—that would mitigate against the application of the Three Strikes law. In 2001, Vasquez committed an armed robbery in Los Angeles County (a serious felony), and about a week later he committed another armed robbery. And in 2017— while he was still on parole from the two Los Angles armed robberies—Vasquez committed the instant armed robberies in the span of two days. The violent nature of Vasquez's conduct escalated in the most recent armed robbery, which resulted in serious facial injuries and a gunshot wound to the innocent victim. Indeed, Vasquez pleaded guilty to a charge of attempting to murder the victim. As far as any positive evidence about Vasquez's background, character, or prospects, there is again no evidence in the record—none—that would militate against the application of the Three Strikes law.

In sum, the trial court's order dismissing one of Vazquez's prior strike convictions plainly "fell outside the bounds of reason under the applicable law and the relevant facts." (See *Williams*, *supra*, 17 Cal.4th at p. 164.) Thus, we reverse the trial court's order of dismissal. On remand, Vazquez will be able to withdraw his guilty pleas.

Vasquez contends the trial court did not abuse its discretion because: "(1) the strike priors arose out of a single case; (2) the length of the determinate term imposed; (3) the remoteness of the priors; and (4) defendant's age." We shall analyze each of these contentions in turn.


*1. It is immaterial that Vasquez's two prior strikes arose out of one case because he was convicted of two separate and distinct armed robberies.*

Strike priors do not have to be brought and tried separately; multiple strikes

13

can arise out of a single case. (*People v. Fuhrman* (1997) 16 Cal.4th 930, 939.) Nothing within the Three Strikes law "suggests that when a defendant has sustained a prior conviction for an offense designated as a violent or serious felony, the prior conviction may be counted as a strike for purposes of sentencing under the Three Strikes law only if the prior conviction was for an offense that was 'brought and tried separately' from another offense that also qualified as a violent or serious felony." (*Id*. at p. 938.)

Nonetheless, Vasquez argues: "Although it may be permissible for two strike priors to result from a prior case, this fact is mitigating in connection with a *Romero* motion." Vasquez cites no authority for this proposition, but he is partially correct. That is, one can imagine a circumstance where a trial court may consider as a fact in mitigation that a defendant's prior strike convictions arose at the same time from the same set of operative facts. (See § 654, subd. (a).) For instance, where multiple victims were the target of a single armed robbery. But that is not what happened in this case. Here, Vasquez's two prior strike convictions arose from two armed robberies that occurred about a week apart from each other; they each involved separate victims. Consequently, the fact that both robberies happened to be pleaded in the same case cannot reasonably be considered as a fact in moderation.

Vasquez argues *People v. Garcia* (1999) 20 Cal.4th 490, compels a different result. We disagree. In *Garcia*, the trial court dismissed a defendant's prior strike conviction with respect to one count, but not another. (*Id*. at pp. 492-493.) The California Supreme found no abuse of discretion. (*Id*. at p. 503.) The Court noted the defendant's prior convictions arose from a single period of aberrant behavior—on the same day—for which he served a single prison term; the defendant also had cooperated with police, his crimes were related to drug addiction, and the defendant's criminal history did not include any actual violence. (*Ibid*.)

In contrast with *People v. Garcia*, *supra*, 20 Cal.4th 490, Vazquez's prior armed robberies were not aberrant behavior arising during a single instance of

14

criminality. Vasquez had a lengthy criminal record that spanned the entirety of his adult life. Indeed, Vasquez committed the two instant armed robberies on two different days while he was still on parole for the two prior armed robberies. Further, unlike the defendant in *Garcia,* who cooperated with police, Vasquez absconded out of the country to avoid capture. Moreover, each of Vasquez's four robberies involved the use of a firearm. Thus, *Garcia* is readily distinguishable and does not alter our analysis.

### 2. *It is immaterial that Vasquez's determinate sentence is "lengthy" because he is not outside of the spirit of the otherwise mandatory Three Strikes law.*

A trial court's discretion to impose what it believes to be a "fair" or "just" sentence is statutorily restricted under the Three Strikes sentencing scheme. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

"Our system of laws confers upon each judge the discretion necessary to weigh punishment and mercy, to find that exquisite balance in which a just sentence reposes. Yet, in a democracy, the scope of a judge's authority is encompassed by the judgment of the citizens who bestow on the judiciary its authority in the first instance. Under our statutory framework, *judges are not empowered to fashion any sentence they choose*. The Legislature has created a sentencing structure within which every court must operate. Both the Legislature and the People, by initiative, have adopted a particular sentencing scheme for repeat offenders. A court may not simply substitute its own opinion of what would be a better policy, or a more appropriately calibrated system of punishment, in place of that articulated by the People from whom the court's authority flows." (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 476-477, italics added.)

"Plainly the Three Strikes initiative, as well as the legislative act embodying its terms, was intended to *restrict* courts' discretion in sentencing repeat offenders." (*Romero*, *supra*, 13 Cal.4th at p. 528, italics added.) "To achieve this end, 'the Three Strikes law *does not offer a discretionary sentencing choice*, as do other

15

sentencing laws, but establishes *a sentencing requirement* to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.""'" (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377, italics added.)

Here, the trial court said, "what I do need to do and what I'm required to do is apply my experience both as an attorney and as a judicial officer in deciding whether or not the court's indicated [sentence] is fair and in the interests of justice."

Respectfully, the trial court got it wrong. Of course, courts are generally obligated to impose sentences that are "fair and in the interests of justice." But individual judges are also fundamentally (and statutorily) required to impose a sentence within the confines of "a sentencing structure within which every court must operate." (*People v. McGlothin*, *supra*, 67 Cal.App.4th at p. 476.) In this case, the court did not act within the confines of the Three Strikes law. As we have discussed, there are simply no reasons whatsoever why Vasquez "'"'should be treated as though he actually fell outside the Three Strikes scheme."'"'" (See *People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) And the trial court was unable to articulate any reasons, even though he had thought long and hard about the case. He just thought 28 years was enough.

The trial court judge apparently decided a determinate 28-year sentence for Vasquez would be "fair and in the interests of justice." But the court's substitution of its own judgment for that of the electorate and the Legislature—as expressed through the mandatory indeterminate Three Strikes sentencing scheme—cannot stand.

*3. It is immaterial that Vasquez's prior strike convictions occurred 16 years before the instant crimes because he spent 13 of those years in prison.*

A prior strike conviction is not considered "remote" for the purposes of

16

mitigation where the defendant has not demonstrated a prolonged period of rehabilitation (a crime free life) in the interim. (See *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) "In determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on. To be sure, a prior conviction may be stricken if it is remote in time. In criminal law parlance, this is sometimes referred to as 'washing out.' [Citations.] The phrase is apt because it carries the connotation of a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*Ibid*.)

Rather than simply calculating the number of years that have passed since the prior strikes, sentencing courts are to consider whether the defendant's prior strike convictions served "as a pivot point for reforming his ways." (See *People v. Mayfield*, *supra*, 50 Cal.App.5th at p. 1107; see also *People v. Gaston* (1999) 74 Cal.App.4th 310, 311-312 ["the remoteness in time of the vacated strike priors was not significant in light of defendant's continuous crime spree, which had substantially spanned his entire adult life. Indeed, defendant was on parole when the present crime was committed"].)

In analyzing whether a defendant's prior criminal conduct was "remote," a trial court should consider whether the defendant "was incarcerated a substantial part of the intervening time and thus had little or no opportunity to commit" additional crimes. (See *People v. Steele* (2002) 27 Cal.4th 1230, 1245 [defendant's prior crime was not "remote" under an Evidence Code section 352 analysis where defendant spent many years in prison during the intervening period]; see also *People v. Loy* (2011) 52 Cal.4th 46, 62-63 [defendant's prior crime was not "remote" under an Evidence Code section 1108 analysis where defendant had spent many years in prison during the intervening period and therefore had little opportunity to commit similar crimes].)

Here, Vasquez was in prison for 13 of the 16 years between the two separate armed robberies he committed in 2001, and the two separate armed robberies he committed in 2017. Vasquez presumably had no opportunities to commit armed

17

robberies while he was in prison; therefore, the 2001 armed robberies are not "remote" for the purposes of this analysis.  Again, it is highly significant that Vasquez was still on parole at the time of the instant offenses.  Vasquez plainly did not demonstrate that his prior convictions served as a "pivot point" for changing his ways.  (See *People v. Mayfield*, *supra*, 50 Cal.App.5th at p. 1107.)  Thus, the 16 years between the prior crime and current crimes are not to be considered as a factor in mitigation.

*4.  It is immaterial that Vazquez was over 40 years old at the time of the instant crimes because his age alone does not take him outside the spirit of Three Strikes.*

Vasquez argues "even with the determinate sentence imposed" he "would serve most of his life in prison."  Vasquez argues he will likely be released in his late 60's and cites statistical studies for the proposition:  "Older offenders are far less likely than offenders to recidivate upon release from prison."[3]

But a similar argument was rejected in *People v. Strong* (2001) 87 Cal.App.4th 328.  In *Strong*, the court held "middle age, considered alone, does not remove a defendant from the spirit of the Three Strikes law.  Otherwise, those criminals with the longest criminal records over the longest period of time would have a built-in argument that the very factor that takes them within the spirit of the Three Strikes law— a lengthy criminal career—has the inevitable consequence—middle age—that takes them outside the law's spirit." (*Id*. at p. 345.)  *Strong* further held "reliance on a statistical assumption would appear to clash with the obligation in *Williams* to review the defendant's individual circumstances for purposes of determining whether he is one of the exceptions who should be deemed outside the spirit of the law."  (*Ibid*.)

We agree with the holding in *People v. Strong*, *supra*, 87 Cal.App.4th 328. Although a defendant's age might ordinarily be considered among a number of factors

_____

[3] To the extent that Vasquez is asking us to consider evidence outside of the record on appeal, we cannot do so.  (See *People v. Szeto* (1981) 29 Cal.3d 20, 34-35.)

when a court imposes a discretionary sentence, the fact that Vasquez was no longer a young man is not a reason for him to be deemed outside of the spirit of the mandatory Three Strikes sentencing scheme. This is particularly true given Vasquez had spent most of his adult life in state prison. Perhaps more importantly, Vasquez's age was not a factor the trial court relied on when it orally stated its reasons for dismissing one of Vasquez's prior strike convictions during the plea and sentencing hearing. (§ 1385, subd. (a).)[4]

## III

## DISPOSITION

The trial court's order dismissing Vazquez's prior strike is reversed. The matter is remanded for further proceedings consistent with this opinion.

MOORE, J.

I CONCUR:

BEDSWORTH, J.

---

[4] The prosecution maintains that because various sentencing factors were raised at the sentencing hearing, the trial court can be "deemed to have *relied* upon them." (Italics added.) We disagree. Generally, a trial court is deemed to have *considered* all relevant sentencing criteria. "Relevant factors enumerated in these rules must be *considered* by the sentencing judge, and will be deemed to have been *considered* unless the record affirmatively reflects otherwise." (Cal. Rules of Court, rule 4.409, italics added.) However, a court is required to affirmatively state its *reasons* for a dismissal on the record: "The reasons for the dismissal shall be stated orally on the record. The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter." (§ 1385, subd. (a).) Here, we cannot deem the court *relied* on any *unstated* reasons for granting Vasquez's *Romero* motion because it was required to have affirmatively *stated* its reasons on the record. (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)

19

O'LEARY, P.J., Dissenting.

I respectfully dissent because I conclude the trial court did not abuse its discretion in its sentencing choice.

As the majority acknowledges, in *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530 (*Romero*), our Supreme Court held a trial court may dismiss a prior strike allegation in the furtherance of justice. In making this decision, *Romero* informs us that a trial court must consider both the defendant's constitutional rights and the interests the prosecution represents. (*Id*. at p. 530.) *Romero* states, "'[A]t the very least, the reason for dismissal must be "that which would motivate a reasonable judge. [Citations.]' [Citation.]" (*Id*. at pp. 530-531.) Given the circumstances surrounding this defendant and these crimes, a reasonable judge would be motivated to strike the third strike.

There is no dispute Vasquez comes within the parameters of the Three Strikes law, but so does every defendant who appears for sentencing with two strikes. It is the trial court's burden to determine *among the qualifying defendants* who is deserving of a prison sentence of at least 25 years to life and who is deserving of a lesser punishment. The question is essentially whether a defendant who clearly comes within the *letter* of the law, comes within the *spirit* of the law. The defendants who come within the letter of the law are for the most part very serious offenders, and it is among this pool of defendants the trial court must compare the defendant. This critical exercise of discretion is precisely what Penal Code section 1385 and *Romero* are all about. There are no "good boys."

Additionally, there is no dispute as to the standard of review. I agree with the majority that we review a sentencing choice made by a trial court for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377 (*Carmony*).)

1

In determining whether a defendant comes within the spirit of the Three Strikes law, the trial court may consider a number of factors. A court makes a discretionary decision as to whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of the defendant's background, character, and prospects, the defendant may be deemed outside the scheme's spirit. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The discretionary decision whether to dismiss a "strike" in furtherance of justice requires consideration of the legitimate interests of society and of the defendant.

Here, the trial court made the determination Vasquez was outside the spirit of the Three Strikes law and deserving of some leniency. In reviewing this determination for abuse of discretion, we are guided by two fundamental precepts.

First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978 (*Alvarez*).) Second, a "'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]" (*Id*. at p. 978.)

Dismissing a strike should only be done in "extraordinary" circumstances, when the ends of justice demand it. (*Carmony, supra,* 33 Cal.4th at p. 378.) But the question as to whether the circumstances are extraordinary is a question the trial court answers in the first instance. "'[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit

2

of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' [Citation.]" (*Ibid*.)

There is no allegation here the trial court exercised its discretion based on impermissible factors such as judicial convenience or antipathy for the Three Strikes law. Instead, the prosecution argues the court's reasons were insufficient to justify the exercise of discretion. A trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it. (*Alvarez, supra,* 14 Cal.4th at p. 977.) And of equal importance is the directive that when reviewing for an abuse of discretion, an appellate court is not authorized to substitute its judgment for the trial court's judgment. (*Id*. at p. 978.)

Setting aside my personal judgment as to whether the trial court's sentence was the sentence I would have chosen, *as I must*, I conclude the prosecution has not carried its burden to demonstrate the trial court's sentencing decision was irrational or arbitrary. When the trial court first indicated it intended to dismiss a strike and the prosecutor objected, the court gave her two weeks to prepare a sentencing brief to see if she could persuade the court to change its mind.[5] At the sentencing hearing, the trial court was unpersuaded. The court emphasized it had thought long and hard about this matter and articulated the reasons for its sentencing decision.

The trial court indicated, "This is an interesting case." The court acknowledged this court's recent decision in *People v. Mayfield* (2020) 50 Cal.App.5th 1096, and explained why it felt this case did not fit within the *Mayfield* circumstances and noted the differences on the record. The court explained its duty to apply its experience

---

[5]     The record reflects that prior to the discussion on the record, the trial court and counsel had extensive unreported discussions in chambers. Although the efficiency and convenience of chambers discussions cannot be disputed, here it would have been helpful if all of the discussions had been repeated on the record.

both as an attorney and as a judicial officer to decide whether the court's intended sentence was fair and in the interest of justice. There was discussion on the record as to the length of Vasquez's prior prison term and his age. It was not irrational or arbitrary for the court to consider the deterrent effect a 28-year sentence, more than double his last prison sentence, would have on him. Nor was it irrational or arbitrary to conclude that when Vasquez is released in his early 60s, he would present a significantly reduced risk to society. The court did what it was required to do. The court considered the legitimate interests of society and the interests of the defendant. That we may have weighed these factors differently is not a basis for reversal.

Admittedly, the deference we must pay to the trial court's judgment is sometimes a bitter pill to swallow where an appellate court justice strenuously disagrees with a trial court's assessment, but the deference owed the trial court is supported by sound reasoning. Criminal calendar judges are called upon to make more sentencing decisions each day than we appellate justices likely review over a period of months. The trial court is in the proverbial catbird seat. While the trial court is essentially viewing cases or causes in the arena in real time, the appellate court is reviewing the matter in the rearview mirror in slow motion. Both perspectives are valuable, but the law requires that when we review for abuse of discretion, we must give the trial court's judgment deference.

I cannot say the trial court abused its discretion by dismissing a strike and imposing a 28-year sentence. I would affirm.


O'LEARY, P. J.


4